ED. Z. BARNES, RESPONDENT, v. W. K. NOBLE, DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF NEW MADRID STAVE COMPANY, APPELLANT.*—43 S. W. (2d) 1060.

Springfield Court of Appeals. December 11, 1931.

*Sharp & Baynes* for appellant.

184

*J. H. Chunn* and *Gallivan & Finch* for respondent.

COX, P. J.—Plaintiff by written contract sold defendant 300,000 feet of logs. Part of these were delivered to and accepted by defendant. Defendant then refused to accept any more logs from plaintiff and this suit followed. On trial by jury, plaintiff recovered $750. Defendant appealed.

The first complaint of appellant is that this suit was based upon a written contract which plaintiff alleged he had performed on his part and that at the trial he was allowed to recover upon a *quantum meruit*. To determine the nature of the action, we must look to the petition. The petition, omitting caption, is as follows:

"Plaintiff, for his cause of action, says that the defendant is W. K. Noble, doing business as New Madrid Stave Company, at New Madrid, Missouri, and that on August 30, 1924, plaintiff entered into a contract in writing with the defendant in which plaintiff sold to defendant 300,000 feet of stave timber, being what is known as gum mixed timber, at $11.50 per thousand feet, to be delivered in No. 8 Ditch at the Y rafted. It was further agreed that the defendant would take up the logs every two weeks when gotten to the bank of the ditch and pay thereon $9.50 per thousand retaining $2 for rafting. A copy of which contract is filed herewith and made a part thereof, marked Exhibit 'A.'

"Plaintiff says that he purchased said timber from which to cut the same, and paid $350 therefor, and that the money to pay for the same was furnished by the defendant.

"Plaintiff says that he has fully complied with his said contract *insofar as he was permitted to do so*, and that he delivered 190,000 feet of said timber rafted at the Y and that the defendant took

said timber, paid the amount due for stumpage, $350, at said time, out of said sum, retaining $2 per thousand thereon.

"Plaintiff further says that he had 15,000 feet of logs on the ditch bank ready for rafting and delivery at the Y; that the defendant, with the permission of plaintiff, took charge of said logs and assisted in rafting them and took said logs but failed to pay anything to plaintiff therefor; that there is now due and owing to plaintiff on said logs the sum of $10.50 per thousand.

"Plaintiff further says that he had 11,000 feet of logs in Ditch 8 rafted, and that the defendant came and took charge of said logs and took them under his contract but has failed and refused to pay plaintiff for same. That the defendant told plaintiff that he could not pay for said logs and would not pay for same.

"That plaintiff had in the woods 33,166 feet of logs cut and ready to cut and haul in but defendant refused to pay him for his timber and refused to accept any more timber from him, refused to pay him for the timber he had received, and he was compelled to leave said timber in the woods and the same was wholly lost; that said timber in the woods was worth $5.50 per thousand.

"Wherefore, plaintiff prays judgment against the defendant in the sum of $750 and for costs.

"GALLAVIN & FINCH,
"J. H. CHUNN,
"Attorneys for plaintiff."

Counsel for appellant are mistaken, as we think, in their contention that this petition alleges full performance on the part of plaintiff. It states that plaintiff "has fully complied with his contract insofar as he was permitted to do so." That is not an allegation of full performance but amounts to an allegation that plaintiff complied with the provisions of the contract until he was prevented from complying further and then alleges what he had done up to the time when it is alleged defendant refused to permit him to complete performance on his part. We construe this petition to be a declaration upon a breach of contract in which the breach was the act of defendant in refusing to allow plaintiff to furnish the remainder of the logs after defendant had received and accepted a part of what was called for by the contract. We agree with appellant that if a party sues upon a contract and alleges full performance upon his part, he must prove full performance in order to recover, but, as said, we do not think this petition makes the allegation of full performance.

If it be true, as alleged by plaintiff, that defendant stopped him and refused to take any more logs, that absolved plaintiff from the duty to furnish more logs and that action upon the part of defendant constituted a breach of the contract upon his part and made-

him liable to plaintiff for whatever damage plaintiff suffered as a result of the breach.

The answer alleges that plaintiff did not deliver any logs at the place of delivery designated in the contract but admitted that defendant had received 190,121 feet of timber and alleged that defendant had overpaid for the logs received $125 and asked judgment against plaintiff for that sum. The jury found against defendant and for plaintiff and that binds us, if the case was properly tried and the evidence supports the finding of the jury. We have carefully read all the evidence and it is clear to us that it will support a finding for plaintiff.

We find no reversible error in the instructions given to the jury.

Error is alleged as to the receipt of evidence by plaintiff as to the value of logs lying on the bank of Ditch No. 8 at the time defendant refused to take any more logs. The contract required the logs to be delivered at the Y without any statement as to how they should be transported from the timber to that place. The evidence shows that the logs were placed in Ditch No. 8 about one and one-half miles above the Y and floated from there down to the Y. Plaintiff's evidence shows that at the time defendant refused to take any more logs plaintiff then had on the bank of Ditch No. 8 some three or four hundred logs. He also had logs in the woods ready to be hauled to the ditch to be rafted and floated to the Y. A witness was permitted to testify that the logs on the bank were worth $14 per thousand at that place. The admission of that evidence was erroneous. The value of these logs at that place was not the measure of plaintiff's damages. He had sold the logs delivered at the Y for $11.50 per thousand and his measure of damages as to these logs on the bank would be $11.50 per thousand less the cost of moving them to the Y where he had agreed to deliver them. This is the second appeal in this case and the judgment should not be again reversed if the error committed can be cured by a *remittitur* here. We cannot tell whether the jury considered this evidence as to the value of $14 per thousand or not. The evidence would warrant a finding that there was 300 logs on the bank that would average eighty-eight feet to the log making a total of 26,400 feet. This at $14 per thousand would come to $369.60. Plaintiff asked for $5.50 per thousand for the logs cut and lying in the woods and had he proceeded in the right way to ascertain his damages he would have certainly been entitled to that much. If he should recover the same for the logs on the bank, he would be entitled for these, the sum of $145.20. If we deduct this from $369.60 we have left $224.40. We do not think the evidence of a value of $14 per thousand on these logs could have injured defendant to any greater extent than $224.40 and if plain-

tiff will, within ten days, remit that amount, the judgment will be affirmed for the balance of $525.60. Otherwise the judgment will be reversed and the cause remanded. *Bailey* and *Smith, JJ.,* concurs.